UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------X

DAQWAN JOHNSON,

                       Petitioner,

               -against-

THE PEOPLE OF THE STATE OF NEW YORK,

                   Respondent.

--------------------------------------------------------X

FILED
CLERK

7/29/2019 10:18 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

For Online Publication Only

**<u>MEMORANDUM AND ORDER</u>**
17-CV-4948 (JMA)

**AZRACK, United States District Judge:**

Petitioner Daqwan Johnson ("Petitioner" or "Johnson"), proceeding <u>pro se</u>, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254. In February 2010, a jury convicted Johnson of manslaughter in the first degree and two counts of criminal possession of a weapon in the second degree. On August 26, 2011, the Nassau County Court (the "County Court") sentenced Johnson to eighteen years imprisonment for the manslaughter conviction and ten years imprisonment for each conviction of criminal possession of a weapon, with each sentence to run concurrently. Johnson seeks habeas relief on the grounds that: (1) the trial court's admission of a witness's testimony violated his right to a fair trial and (2) the trial court's failure to obtain an <u>Antommarchi</u> waiver before holding two sidebar conferences during jury selection constitutes a reversible error.

For the following reasons, Johnson's petition is DENIED in its entirety.

## I. BACKGROUND

In 2009, Johnson was charged with murder in the second degree and two counts of criminal possession of a weapon in the second degree. (Trial Tr., 1/21/2010, ECF 6-11, 16:20–22.) At the outset of Johnson's first trial, he waived his right to be present at a sidebar questioning of a potential juror (known, under New York state law, as an <u>Antommarchi</u> waiver). (Trial Tr.,

2/3/2010, ECF No. 6-13, 85:13–18.)  The first trial resulted in a mistrial before jury selection was completed due to a swine flu quarantine at the jail where Johnson was present, rendering Johnson incapable of attending the proceedings.  (Id. at 85:19–25.)  At his second trial, after jury selection, openings statements, and the testimony of two witnesses, Johnson's counsel discovered that a second Antommarchi waiver had not been signed.  (Id. at 86:1–24.)  Two sidebar conferences had occurred before Johnson signed a second Antommarchi waiver.  (Trial Tr., 2/2/2010, ECF 6-12, 156:22–157:3, 158:4–6).  The record does not state the contents of the first conference, but it does state that all jurors had exited the courtroom before the prosecution requested a sidebar, and immediately after the conference, counsels for both parties began issuing challenges for cause. (Id. at 156:20–157:5.)  The record similarly does not state the contents of the second conference, and immediately following this conference, the County Court determined in open court that two of the prospective jurors would be alternate jurors.  (Id. at 159:4–12.)  Johnson was present while these determinations were made, and no jurors were present.  (Id. at 156:20–21, 158:7–8, 158:17–18.).  Johnson eventually signed a new Antommarchi waiver and moved for a mistrial.  (Trial Tr., 2/3/2010, at 86:18.)  The County Court denied the motion, finding that the first Antommarchi waiver was still valid and that Johnson's constitutional and statutory rights were not violated.  (Id. at 89:6–90:7.)

At the second trial, the evidence showed that Johnson shot his friend, Antonio Patterson, outside the Island Rock Club in Hempstead, New York on October 21, 2007.  (Trial Tr., 2/17/2010, ECF 6-16, 130:9–16.)  A jury convicted Johnson of Manslaughter in the First Degree (NY Penal Law § 125.20) and two counts of Criminal Possession of a Weapon in the Second Degree (NY Penal Law § 265.03).  (Id. at 130:9–19.)  An eyewitness testified that while Patterson and another man were fighting in the parking lot outside the club, Patterson yelled to Johnson to shoot the man

Patterson was fighting.  (Trial Tr., 2/4/2010, ECF No. 6-14, 93:18–96:1.)  Johnson fired, striking Patterson instead of the other man, killing Patterson.  (Id.)  Additionally, a witness named Nicketa Douglas testified that two men had attempted to rob him in the parking lot of the club on the night of the shooting while Douglas was placing flyers on the windshields of cars to promote his birthday party.  (Id. at 46:10, 48:10–25, 49:12–50:12.)  Douglas testified that one of the men had a black ski mask over his face and pulled out a black handgun, at which point Douglas ran to his car and drove away.  (Id. at 52:7, 53:4–7, 54:6–9.)  Douglas ultimately returned to the scene of the attempted robbery and, when he saw police cars in the parking lot of the club, he told the police what had happened.  (Id. at 55:25–56:9.)  At trial, police witnesses testified that a black ski mask and a magazine that fit the described handgun were found at the scene of the crime.  (Trial Tr., 2/3/2010, 137:25–138:4, 139:6–8.)  The DNA on the black ski mask implicated Johnson, while the DNA test on the magazine was inconclusive.  (Trial Tr., 2/5/2010, ECF 6-15, 156:19–157:2; see also Trial Tr., 2/11/2010, ECF 6-16, 42:12–13.)

On August 26, 2011, the County Court sentenced Johnson to eighteen years imprisonment for the manslaughter conviction, and ten years imprisonment for each conviction of criminal possession of a weapon, with each sentence to run concurrently.  (Trial Tr., 8/26/2011, ECF 6-17, 11:12–20.)

On direct appeal, Johnson argued that: (1) the trial court's failure to obtain an Antommarchi waiver before holding two sidebar conferences during the second jury selection constituted reversible error; (2) the sentence imposed was excessive in light of his circumstances; and (3) admission of Douglas' testimony violated his right to a fair trial because the testimony was prejudicial and irrelevant.  People v. Johnson, 137 A.D.3d 811, 811–13, 26 N.Y.S.3d 356, 357–59 (2d Dep't 2016).  The Appellate Division affirmed the convictions, finding that: (1) Johnson's

presence at the sidebar conferences would not have affected the outcome of those conferences; (2) the sentence imposed was not excessive; and (3) Douglas' testimony was admissible because it was relevant to and probative of Johnson's motive to commit the charged crimes, gave the jury an appropriate context in which to evaluate the case, provided an explanation to the jury for the fight between Patterson and the other man, as well as an explanation for Johnson's possession of the gun.  Id.  Further, the Appellate Division found that Douglas' testimony provided necessary background evidence and completed the narrative of the events leading up to the shooting, and was also probative of the eyewitnesses' credibility.  Id.  The New York Court of Appeals denied leave to appeal.  People v. Johnson, 27 N.Y.3d 1134, 39 N.Y.S. 116 (2016).

Johnson filed the instant petition on August 11, 2017.  (Petition, ECF No. 1.)  Johnson raises two grounds for habeas relief.

## II.  DISCUSSION

### A.  Standard of Review

#### 1.  Overview of AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners."  Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring).  Under AEDPA, a district court will "entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  To make that showing, the petitioner must satisfy three hurdles: (1) the exhaustion of state remedies, (2) the absence of a procedural bar, and (3) the satisfaction of AEDPA's deferential review of state court decisions.  See 28 U.S.C. § 2254.

## 2. AEDPA Standard of Review

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'" Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000). A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412–13 (O'Connor, J., concurring). A decision involves "an unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. This standard does not require that all reasonable jurists agree that the state court was wrong. Id. at 409–10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66 (2011) (per curiam)). This standard is "difficult to meet." White v. Woodall, 572 U.S. 415, 419 (2014) (quoting Metrish v.

Lancaster, 569 U.S. 351, 357–58 (2013)), reh'g denied, 573 U.S. 927 (2014). A petitioner must show that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 419–420.

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006). A state court's finding of fact will be upheld "unless objectively unreasonable in light of the evidence presented in the state court proceeding." Lynn, 443 F.3d at 246–47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams, 529 U.S. at 389.

### 3. Pro Se Status

Johnson "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). But, in light of his pro se status, the Court will construe his submissions liberally and interpret them "to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, Johnson is not excused from "compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981) (per curiam) (internal quotation marks omitted)).

## B.  Claim for Relief

Petitioner raises two grounds for habeas relief: (1) the admission of Douglas' testimony violated his right to a fair trial because it was irrelevant and the testimony's prejudicial nature far outweighed its probative value; and (2) the trial court's failure to obtain an Antommarchi waiver from Petitioner before holding two sidebar conferences during jury selection is reversible error. (Pet., at 15–16.)

Respondent contends that neither grounds for relief are cognizable habeas claims because they implicate questions of state law.  (Resp't Mem., at 4.)

### 1.  Personal Jurisdiction

Respondent first seeks dismissal of the Petition on the ground that the Court lacks personal jurisdiction over Respondent because "Petitioner, incarcerated at Sing Sing Correctional Facility, has not named the custodian of Sing Sing Correctional Facility as the respondent in this case." (Resp't Mem., at 4.)

The appropriate respondent to a habeas corpus petition is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; see Rumsfeld v. Padilla, 542 U.S. 426, 450 n.18 (2004) ("§ 2254 petitioners challenging present physical custody [should] name either the warden or the chief state penal officer as a respondent.") (citing Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts).  Here, Petitioner incorrectly named the State of New York as respondent.  However, in light of Petitioner's pro se status, the Court treats the Petition as if Petitioner had named the correct respondent and declines to dismiss the Petition for lack of personal jurisdiction.  The Clerk of the Court is directed to terminate the State of New York and add the warden of the Sing Sing Correctional Facility as the respondent in this action.  See Fed. R.

Civ. P. 21 (providing that "on its own, the court may at any time, on just terms, add or drop a party").

## 2. Ground 1 – Sixth Amendment Right to a Fair Trial

Petitioner alleges that the County Court violated his Sixth Amendment right to a fair trial when it admitted Douglas' testimony. (Pet., at 5.) He claims that Douglas' testimony was irrelevant and the prejudicial nature of the testimony far outweighed its probative value. (Id.) This claim is without merit.

"Generally, state court rulings on evidentiary matters are a matter of state law and do not raise constitutional issues." Warren v. Miller, 78 F. Supp. 2d 120, 135 (E.D.N.Y. 2000); see Lewis v. Jeffers, 497 U.S. 764, 780 ("[H]abeas corpus relief does not lie for errors of state law."). Accordingly, state court evidentiary rulings will not be second-guessed on federal habeas review unless those rulings rise to the level of a constitutional violation. Warren, 78 F. Supp. 2d at 134–35. For an erroneous admission of evidence to rise to the level of a constitutional violation, a petitioner must show that the evidence was "so extremely unfair that its admission violates 'fundamental conceptions of justice,'" Dowling v. United States, 493 U.S. 342, 352 (quoting United States v. Lovasco, 431 U.S. 783, 790 (1977)), or that "[t]he erroneous admission of unfairly prejudicial evidence . . . 'had [a] substantial and injurious effect or influence in determining the jury's verdict[.]'" Edwards v. Superintendent, Southport C.F., 991 F. Supp. 2d 348, 376 (E.D.N.Y. 2013) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637–38 (1993)). The Supreme Court has construed the "category of infractions that violate 'fundamental fairness' very narrowly." Dowling, 493 at 352.

Here, there is no indication that the admission of Douglas' testimony had a substantial and injurious influence on the jury's verdict. As the Appellate Division explained, Douglas' testimony

"was relevant and probative of the defendant's motive to commit the charged crimes, and the testimony gave the jury an appropriate context in which to evaluate the case." Johnson, 137 A.D.3d at 812, 26 N.Y.S.3d at 358. The Appellate Division further explained that the testimony:

> [P]rovided an explanation to the jury for the fight between Patterson and one of the men, and for [Petitioner's] possession of the gun in the parking lot. In addition, the testimony was necessary background evidence and completed the narrative of events leading up to the shooting, and was also probative of the eyewitness's credibility, which was a central issue for the jury to resolve.

Id. at 813, 358–59 (internal quotation marks and citation omitted). Because the admission of Douglas' testimony also helped corroborate the physical evidence found at the scene of the shooting, it was highly probative. Thus, the Appellate Division's affirmance the County Court's decision to admit Douglas' testimony was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts.

### 3. Ground 2 – Antommarchi Claim

Petitioner also seeks habeas relief on the ground that the County Court failed to obtain an Antommarchi waiver before holding two sidebar conferences during the second jury selection. (Pet., at 6.) According to Petitioner, this alleged failure violated his right to be present at all material stages of his criminal proceeding. (Id.) However, this ground is not cognizable on habeas review and is, in any event, meritless.

It is well established that an alleged violation of a petitioner's Antommarchi rights is not a cognizable claim on federal habeas corpus review. In People v. Antommarchi, the New York Court of Appeals held that a criminal defendant has a right to be present during a sidebar questioning of a potential juror when the questioning pertains to the potential juror's ability to objectively weigh the evidence, unless that right is waived. 80 N.Y.2d 247, 590 N.Y.S.2d 33 (1991). Antommarchi is a state court decision—not clearly established federal law—and

"[s]ubsequent decisions of the New York Court of Appeals make clear that the <u>Antommarchi</u> rule is not a result of federal constitutional or statutory mandate, but rather, is grounded in New York Criminal Procedure Law § 260.20." <u>Diaz v. Herbert</u>, 317 F. Supp. 2d 462, 473 (S.D.N.Y. 2004); <u>see</u> <u>also</u> <u>People v. Maher</u>, 675 N.E.2d 833, 836 (1996) ("[A] defendant's right to be present at a sidebar conference with a prospective juror exploring possible general or specific bias is governed exclusively by New York statutory law."). Accordingly, this claim does not provide a cognizable ground for habeas relief.

To the extent Johnson attempts to raise a federal claim based on the same facts, any such claim is plainly meritless. Under federal law, "a criminal defendant has a right to be present at all material stages of his trial under the Confrontation Clause of the Sixth Amendment and Due Process Clause of the Fifth and Fourteenth Amendments." <u>Diaz</u>, 317 F. Supp. 2d at 473 (citing <u>United States v. Gagnon</u>, 470 U.S. 522, 526 (1985)). This right, however, "is not absolute," and "applies only to the extent that a fair and just hearing would be thwarted by the defendant's absence." <u>Id.</u> at 473–74 (citing <u>Snyder v. Massachusetts</u>, 291 U.S. 97, 105–06 (1934) and quoting <u>United States v. Ferrarini</u>, 219 F.3d 145, 152 (2d Cir. 2000)).

The Constitution does not require a defendant's presence at all sidebar conferences. <u>Gaiter v. Lord</u>, 917 F. Supp. 145, 152 (E.D.N.Y. 1996). A petitioner's presence is not required at a sidebar discussion if his or her absence would not have "a substantial effect on [his or her] ability to defend." <u>Id.</u> (quoting <u>Snyder</u>, 291 U.S. at 108). Courts recognize that, "federal standards regarding a defendant's presence at a side bar[] are less stringent than New York's standards." <u>Nichols v. Kelly</u>, 923 F. Supp. 420, 426 (W.D.N.Y. 1996).

Here, Petitioner's absence from the two sidebar conferences did not thwart his right to a fair trial, and did not rise to a constitutional violation because the Constitution does not require

Petitioner's presence at these sidebars, regardless of whether the first <u>Antommarchi</u> waiver was valid at the time of the sidebars. The two sidebar conferences did not concern material stages of the trial. The record shows that, <u>inter alia</u>, the conferences only concerned two alternate jurors, who were never even needed during the course of the trial. (Trial Tr., 2/2/10, at 156:9–12; Trial Tr., 2/17/10, 132:16–23.) Thus, Petitioner's presence was not required at these sidebars because his presence did not have a substantial effect on his ability to defend. <u>Gaiter</u>, 917 F. Supp. at 152. Petitioner's federal claim is plainly meritless.

In denying Petitioner's motion for a mistrial, the County Court found not only that the first <u>Antommarchi</u> waiver was still valid, but also Petitioner's absence from the sidebar conference did not violate his statutory and constitutional right to be present during all material stages of the criminal proceeding. (Trial Tr., 2/3/2010, 89:8–22.) The Appellate Division affirmed this decision, finding that Petitioner's presence at the sidebar conferences would have not affected the outcome of those conferences. <u>Johnson</u>, 137 A.D.3d at 811–12, 26 N.Y.S.3d at 358.

Thus, to the extent Petitioner raises a federal claim concerning the sidebar conferences, both in state court and in his Petition, the state courts' decision was not contrary to, or an unreasonable application of, clearly established federal law, as it did not rise to a constitutional violation, nor was it based on an unreasonable determination of the facts.

### III. CONCLUSION

For the reasons stated above, the Petition is DENIED. A certificate of appealability shall not issue because Petitioner has not made a substantial showing that he was denied a constitutional right. <u>See</u> 28 U.S.C. § 2253(c)(2). I certify that any appeal of this Order would not be taken in

good faith, and thus in forma pauperis status is denied for the purpose of any appeal. Coppedge

v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk of the Court is directed to amend the caption to terminate the State of New York

and add the warden of the Sing Sing Correctional Center as respondent, mail a copy of this Order

to the pro se Petitioner, and to close the case.

**SO ORDERED.**

Dated:  July 29, 2019
Central Islip, New York

_____/s/  (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE